## Sutton et al. v. Russell's Executor.

(Decided December 16, 1930.)

POLIN & POLIN and W. F. GRIGSBY for appellants.

MARSHALL DUNCAN for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Cecil Hundley, as executor of Mrs. Josie Russell, brought this action against John Sutton and Vallie Sutton, alleging in his petition, in substance, these facts: The defendants executed and delivered on December 29, 1925, to Mrs. Josie Russell and Henry Russell, their note

for $500, bearing interest from date. Henry Russell died, and his administrator assigned and transferred to plaintiff's decedent, Josie Russell, his entire interest in the note, and at the time of her death she was the sole owner of it. No part of the note had been paid, except the interest to January 1, 1928. He was unable to file the note with the petition, as it had been lost, misplaced, or destroyed without fraud or fault on his part or on the part of his testator. He tendered a bond pursuant to section 7 of the Civil Code of Practice and prayed judgment on the note. The defendants filed their answer denying that they or either of them executed or delivered the note mentioned in the petition. The case came on for trial at the November term, 1929, and the jury failed to agree. At the February term, 1930, the defendants filed an amended answer in which they denied that they or either of them on December 29, 1925, or at any time, executed or delivered to plaintiff their promissory note for the sum of $500 or any sum, or that for a valuable consideration, or at all, Henry Russell's administrator assigned or transferred to Josie Russell his interest, or any interest in the note, or that at her death she was the owner of it in its entirety or at all, or that the note had been lost, misplaced, or destroyed without fraud or fault on the part of the plaintiff or his testator. The case came on for trial on March 4, 1930. The defendants then offered to file a second amended answer in which they averred that about the time named in the petiton they executed to the plaintiff's testator a note for the sum of $200; that the interest was paid on this note until January 1, 1928; that they owed the testator the note for $200, with interest from January 1, 1928, and they offered to confess judgment for that amount. The court refused to allow the second amended answer to be filed. The evidence was heard, and at the conclusion of the evidence the court peremptorily instructed the jury to find for the plaintiff. Judgment was so entered, and the defendants appeal.

Omer Hundley testified in brief to these facts: He was the son of Mrs. Russell by her first marriage; she died testate. Mrs. Sutton was a niece of his mother. He was acquainted in a general way with his mother's affairs, and she showed him her papers. He saw a note for $500 dated December 29, 1925, signed by John S. Sutton and Vallie Sutton and payable to H. M. Russell and Josie Russell. H. M. Russell was his stepfather and

died in February, 1928. His mother after his death took this $500 note, and Will Russell, as the administrator of H. M. Russell, took a note for $400 against Winfield Russell and $100 against Reed Russell in the division. His mother died in January, 1929. He had no interest in his mother's estate. Reed Russell testified that he was a son of H. M. Russell; that he saw the note for $500, above referred to; that it was payable to H. M. Russell and Josie Russell. After his father's death she took this note, and his father's estate took a note for $100 on him and $400 on his brother. Being asked how he knew it was a $500 note, he said he was there when they divided and heard them talking about it too much. He said he did not read the note, but she would not have made the division that way if it was not a note for $500. Winfield Russell, also a son of H. M. Russell, testified to the same facts, and said that his brother who was the administrator of his father and then dead, had the note at the time of the division. He did not read it. Tom Russell, another son of H. M. Russell, testified that his father and his stepmother had some twelve or fifteen notes; they could not see very good, and they would get the notes out and his brother would just pick out the note that they wanted. His brother came to a $500 note, and he said, "Here is a note for $500.00 that aint mine; and Mrs. Russell said 'that's Sutton's note.'" He did not read the note and did not know what it was from what he saw His brother Winfield saw it. The court excluded the evidence of the conversation between Mrs. Russell and Winfield. Mrs. Mary Russell testified that Mrs. Josie Russell died on January 22, 1929, and Mrs. Vallie Sutton was at her house Christmas week and said that she owed her aunt and would aim to pay her when she sold her tobacco; that they had had sickness and she aimed to pay her one-half when they sold the tobacco. She did not name any amount; said it was borrowed money. Mrs. Vallie Sutton was introduced in her own behalf and denied having the conversation with Mrs. Mary Russell. She also testified that she had never signed any $500 note, but she had signed a $200 note, but the court excluded her evidence as to transactions with the deceased.

John Sutton was offered to testify to the same facts, but the court refused to allow him to testify as to what occurred between them and the decedent. The defendant then offered to prove by him that the plaintiff, Cecil Hundley, said to him in the presence of Earl Baar and

Bent Derringer at B. B. Leachman's farm last year that there was a note for $200 given by John Sutton and Vallie Sutton to Mrs. Josie Russell, but she had destroyed it prior to her death. The court excluded this evidence. The defendants then introduced Earl Barr and Bent Derringer and offered to prove by them that Hundley at the time and place stated had made these statements. The court refused to admit the testimony. The plaintiff had not testified in the case. R. E. Foster testified that he was the cashier of the Springfield State Bank, and there was a charge to John Sutton on February 10, 1927, for $12, and Mrs. Josie Russell was credited with that amount on the same day. He also testified that there was a like charge of $12 to Sutton's account on January 7, 1928, but that Mrs. Russell did not at that date keep her account at his bank. John Sutton was then reintroduced and offered to prove that the $12 checks referred to were for interest on the $200 note. The court finally properly excluded his evidence. He could not testify to this, a transaction with the deceased.

Although the plaintiff, Cecil Hundley, had not testified in the case, the court erred in refusing to allow the defendants to prove admissions made by him. The admissions of the adverse party are always competent.

> "Admission of a party to the record are competent against him, even though the declarant is prosecuting or defending the action in a representative capacity." 22 C. J. 345, sec. 400.
> "The essential fact with respect to an admission being that it was made by a party of some one for whose statements he is legally responsible, it is immaterial to whom the admission was made." 22 C. J. 410, sec 490.

Section 7 of the Civil Code of Practice provides:

> "An ordinary or equitable action may be brought upon a bill of exchange, or a note or other obligation, or upon an indorsement or assignment thereof, which, or upon a judgment the record of which, is lost destroyed, mutilated, or defaced, without fraud on the part of the plaintiff, or of those under whom he claims."

The rule under this provision is:

> "While we think the petition was sufficient to show that the note in question was either lost or mis-

placed at the time the suit was filed, it contains no allegation to the effect that the note was lost or misplaced without fraud on the part of plaintiff, or those under whom it claimed. In our opinion, such an allegation is a prerequisite to recovery; in other words, it is not sufficient merely to show that the note is lost or destroyed, but the party suing must both allege and prove that it was lost or destroyed without fraud on his part, or of those under whom he claims.'' Hoyland v. Nat. Bank of Middlesborough, 137 Ky. page 686, 126 S. W. 356, 357.

The only evidence in the record as to the paper being lost is the testimony of Omer Hundley, who said that he saw his mother in December before she died and she then said she did not have the note, that she had misplaced or lost it. To this evidence the defendant objected, and the objection was sustained and the evidence excluded. The evidence was properly excluded. Mrs. Russell could not make evidence for herself by her self-serving declarations in the absence of the defendants. Her executor simply stands in her shoes. He occupies no better position than she would have occupied if she had not died and had brought this suit. Without this evidence there is nothing in the testimony to show that the paper was lost. For all that appears here, it may have been in her papers and have passed to the possession of the executor when he qualified.

The witnesses for the plaintiff who testified to seeing the note did not see it executed or know anything about its execution or delivery. The jury might well infer from their testimony as a whole that all they knew was that they saw a paper they took to be a $500 note signed by the defendants. But none of the witnesses were qualified to give an opinion as to the genuineness of the signatures. They did not testify that they had ever seen the defendants write or were acquainted with their handwriting, or that they examined the signatures. The jury might well infer from their testimony as a whole that their testimony was based on what was done in the division rather than a personal knowledge of what was on the paper. Their testimony that it was a note for $500, signed by the defendants, should not have been admitted without proof qualifying them to testify as to the signatures as above indicated. In the absence of positive evidence as to what has become of the paper, or, if lost, how it was lost, the conclusion to be drawn from the circum-

stances is one for the jury and not a question of law for the court.

The defendants were not competent to testify that they did not give the deceased the $500 note. To testify that a transaction did not occur is to testify that an act "was omitted to be done." The court properly allowed Omer Hundley to testify, as he showed that he had no interest in the estate of his mother. The defendants, if they wished to raise this question, should have shown that he did have an interest.

In the absence of proof that the note in controversy was lost or destroyed without fault of the deceased or the executor, the plaintiff cannot recover thereon. But this, like other facts, may be shown on another trial by circumstances reasonably warranting the jury to so infer. The second amended answer was not verified, and the court properly refused to permit it to be filed; but on the return of the case the court will permit it to be filed if properly verified. The defendants may put in issue the amount of the note, and they may show the fact as in other cases by circumstances sufficient to warrant this conclusion.

Judgment reversed, and cause remanded for a new trial.

Judge GRIGSBY not sitting.